UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ST. AMANT,

        Plaintiff,

                                    Case No. 05-CV-72900

vs.

                                    HON. GEORGE CARAM STEEH

TAYLOR POLICE DEPARTMENT,
THE CITY OF TAYLOR, CATHERINE
WRIGHT-VOLANTE, DAVID COWELL,
WALTER HOWELL, PIETRO
DEGUILI, JOHN DOE OFFICER #5,
AND JOHN DOE OFFICER #6,

        Defendants.
_____/

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#18)

Plaintiff asserts various constitutional and state law claims against the City of Taylor and individual police officers after he was physically subdued at the police station following his arrest. Because the police conduct in this case was reasonable under the circumstances, the court grants summary judgment on the claimed constitutional violations, dismisses the state law claims, and denies Plaintiff's request to amend the complaint as futile.

This case arises out of the arrest of Plaintiff David St. Amant on June 25, 2003. Plaintiff was arrested for drunk driving by Taylor Officers Szokola and Michowski at 11:53 p.m. after he registered at .17 on the chemical test. This was Plaintiff's third arrest for drunk driving. Plaintiff filed a complaint in Wayne County Circuit Court against the Taylor Police Department, City of Taylor, and Officers 1 through 6 on June 20, 2005. The

complaint alleges violations of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and the Michigan Constitution, intentional infliction of emotional distress, assault and battery, gross negligence, denial of medical care, grossly negligent training of police officers, and grossly negligent supervision of police officers. Defendants removed the case to federal court based on the federal claims. Plaintiff amended his complaint to add the names of Defendants Cadets Catherine Wright-Volante, David Cowell, Pietro DeGuili, and Corporal Walter Howell. The case is presently before the court on Defendant's motion for summary judgment.

FACTUAL BACKGROUND

After Plaintiff was arrested and taken to the Taylor police station, he was escorted to the booking room. Plaintiff's property, consisting of a wallet, money, and keys, was placed on the booking table. Plaintiff was told he would be released when he was sober, and then was told to sit outside the booking room on the booking bench to await further processing. Plaintiff's left hand was handcuffed to the bench.

While Plaintiff was on the booking bench, a state trooper came into the jail with a prisoner and took the prisoner into the booking room. Plaintiff became agitated about the prisoner being in the same room with his property. The state trooper told Plaintiff nobody was going to bother his things, but Plaintiff was not satisfied with this answer. Plaintiff, being disruptive of jail operations, was told to "shut up and sit down." Plaintiff admits he had the chance to sit down, but he did not comply immediately, and was put down on the bench by a cadet. (St. Amant Dep. at 112-13). Soon after, Defendants Cowell, DeGuili and Howell removed Plaintiff's handcuffs. Plaintiff became resistive and struggled with the

officers for a few seconds, as the video of the incident makes clear.  The officers then placed Plaintiff against a wall, where they frisked him before taking him to a holding cell. Cowell, DeGuili, and Howell had no further contact with Plaintiff.  Defendant Wright-Volante had nothing to do with restraining Plaintiff (St. Amant Dep. at 121, 130-31), and Plaintiff has stipulated to dismiss her from the instant matter (Pl. Brief in Opp. at 2).

Plaintiff alleges that while one of his wrists was handcuffed to the booking bench, he was grabbed by the shoulders, spun around, shoved onto the bench and grabbed by the throat and then kicked; that one of his arms was hyper-extended and his head was rammed into the opposite wall; that his upper body was punched and that he was forcibly led to a holding cell; and that he was thrown into the holding cell.  Plaintiff fails to identify, however, what any of the named Defendants did to him.

Before his release the next morning, Plaintiff was photographed and questioned for the Physical-Medical Evaluation Form.  At that time, Plaintiff indicated that he had pain in his ribs, but did not require immediate medical treatment.  Plaintiff later went to the emergency room at Heritage Hospital and was diagnosed with an undisplaced fracture of his ninth rib.  He was prescribed pain medication and released.  Plaintiff testified at his deposition that he also sustained injuries to his right elbow and left wrist.  (St. Amant Dep. at 22, 45.)  The hospital records, however, note no evidence of trauma to plaintiff's head, neck, or extremities.  Further, Plaintiff testified that he suffered emotional injuries of embarrassment and fear of police officers.  However, Plaintiff has not sought any psychological treatment since the incident occurred.  (St. Amant Dep. at 36-37.)

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  Summary judgment is not a disfavored procedural shortcut.  Id.; see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

4

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

I. Liability of Individual Defendants

    A. Plaintiff Sued Defendants in Their Official Capacities

The amended complaint alleges that Plaintiff is suing the individual officers in their official capacities. This is equivalent to a suit against the governmental entity, so the individual defendants can only be held liable if the constitutional violations alleged were the result of an unconstitutional policy or custom. Matthews v. Jones, 35 F.3d 1046, 1049 (1994). In order to prevail, then, Plaintiff must show that there is a policy or custom which led to the alleged constitutional violation in this case. The City of Taylor's policy addressing the use of force provides that "officers shall use the minimum amount of force necessary to effect lawful arrests, overcome resistance and perform their other lawful duties based on the totality of the circumstances." Further, Plaintiff has offered no factual evidence, nor any proffer of expected discoverable evidence, indicating that the City's actual practice

deviates from this policy.  Thus, summary judgment is granted on Plaintiff's constitutional claims as to all individual Defendants.

      B.  <u>Whether Plaintiff's Constitutional Rights Were Violated</u>

          1.  <u>Plaintiff's Fifth, Eighth, Fourth, and Fourteenth Amendment Claims Fail</u>

Plaintiff has not sought to amend his complaint to sue the defendant officers in their individual capacities.  However, summary judgment would still be proper even if the Court allowed Plaintiff leave to amend.  Plaintiff's claims under 42 U.S.C. § 1983 allege violations of the "substantive component of the Fifth Amendment and due process clause of the Fourteenth Amendment as well as the equal protection clause of the Fourteenth Amendment and his right to be free of cruel and unusual punishment under the Eighth Amendment."  There is no dispute that Plaintiff was lawfully arrested and incarcerated as a result of driving while under the influence of intoxicating liquor, and Plaintiff's alleged violation of the Fifth Amendment therefore fails.  Further, the Eighth Amendment only protects prisoners after conviction and sentence.  See Ingraham v. Wright, 430 U.S. 651, 671 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.") Finally, Plaintiff has failed to plead a violation of the Fourth Amendment and has requested leave to amend his complaint to do so. The Court will consider the implications of that potential claim for the analysis of issues raised by this motion.  However, because the Court concludes that Plaintiff's request to amend to state a Fourth Amendment violation would be futile, for the reasons following, that request is denied.

2. Interplay Between Plaintiff's Fourteenth and Fourth Amendment Claims of Excessive Force

In order to determine whether the individual Defendants violated Plaintiff's constitutional right to be free from excessive force, the Court must first examine the appropriate constitutional standard against which to measure the actions of the officers. See Graham v. Connor, 490 U.S. 386, 394 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. . . . The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard."). A claim of excessive force against a public official in the course of an arrest or investigatory stop is analyzed under Fourth Amendment reasonableness stricture. Id. at 394-97. The plaintiff must prove that the official action was objectively "unreasonable" "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. In considering the reasonableness of the force used, the court must consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Id. at 396. The court should also consider the severity of the injury to the suspect. Martin v. Heideman, 106 F.3d 1308, 1311 (6th Cir. 1997).

At some point, the Fourth Amendment reasonableness standard ceases to apply and a higher standard is imposed under a theory of substantive due process. In Graham, for example, the Supreme Court discussed with approval the appropriate standard for a

pretrial detainee established in Johnson v. Glick, 481 F.2d 1028, 1032-33 (2nd Cir. 1973).

In that case the court invoked the Due Process Clause instead of the Fourth Amendment

and held that the force used crosses the constitutionally established line only if it "shocks

the conscience" of the court. Id.   Unlike a reasonableness standard, "the constitutional

concept of conscience shocking . . . points clearly away from liability, or clearly toward it,

only at the ends of the tort law's spectrum of culpability." County of Sacramento v. Lewis,

523 U.S. 833, 848 (1998).   There must be "conduct intended to injure in some way

unjustifiable by any government interest." Id. at 849.  The distinction is ultimately "whether

force was applied in a good faith effort to maintain or restore discipline or maliciously and

sadistically for the very purpose of causing harm." Id. at 853.  Relevant factors also include

"the need for the application of force, the relationship between the need and the amount

of force that was used, [and] the extent of injury inflicted." Whitley v. Albers, 475 U.S. 312,

321 (1986).

        The point at which substantive due process applies as opposed to the Fourth

Amendment is somewhat unclear.  The Sixth Circuit has held that "the seizure that occurs

when a person is arrested continues throughout the time the person remains in the custody

of the arresting officers," and thus that the Fourth Amendment reasonableness standard

is applicable during this period.  McDowell v. Rogers, 863 F.2d 1302, 1306 (6th Cir. 1988).

In Phelps v. Coy, 164 F. Supp. 2d 961, 973 (S.D. Ohio 2000), the court found that the

Fourth Amendment applied where the plaintiff was in the custody of the arresting officers

in the booking area of the police station at the time of the alleged incident.  Here, it is

unclear whether Plaintiff had officially been booked when the officers allegedly used

8

2:05-cv-72900-GCS-DAS   Doc # 31   Filed 08/14/06   Pg 9 of 15   Pg ID 369

excessive force.  Plaintiff has testified that he had a conversation with one of the arresting officers in the booking area of the police station before the incident occurred.  (St. Amant Dep. at 101.)  However, Plaintiff does not claim that he was still in the custody of the arresting officers at the time of the incident, nor has he named either of the arresting officers as defendants.  Yet it is also unclear whether Plaintiff would fall under the definition of a "pretrial detainee" for purposes of substantive due process analysis, since he was only being held at the police station for the night and was released the next morning.  On the other hand, Plaintiff was under arrest for his third drunk driving violation and was not necessarily entitled to nominal bond inasmuch as he was chargeable with a felony offense. In short, neither the facts nor the case law are developed enough to conclude whether Plaintiff's exact status at the time of this incident was that of a "pretrial detainee" or simply "in custody."  Nevertheless, for purposes of the Fourteenth Amendment substantive due process claim advanced by the Plaintiff, the Defendants' actions clearly do not "shock the conscience," as set forth in the analysis below.  Moreover, even under the less forgiving standard applied under Fourth Amendment analysis, the actions of the Defendants were not unreasonable.  Plaintiff's claim would therefore fail under either standard.

### 3. Plaintiff's Potential Fourth Amendment Claim Fails So Allowing an Amendment to State It Would Be Futile

Even viewing the facts in the light most favorable to Plaintiff, jurors could not determine from the facts that the actions of the officers were unreasonable.  In making this assessment, the court has the benefit of the video covering all of the pertinent interactions complained of by Plaintiff.  Plaintiff has testified that he was handcuffed to the booking

bench at the time of the incident.  However, only Plaintiff's left hand was handcuffed to the

bench, and Plaintiff was still able to stand up, move around, talk, and point at the other

officers.  In addition to the obvious disruption in the police offices caused by Plaintiff, he

presumably also had the potential to cause harm to the officers.  Plaintiff has also stated

that he was told to "shut up and sit down," and that he had the chance to do so but did not.

Despite Plaintiff's version of the facts, the videotape at a minimum indicates that Plaintiff

was resisting the officers' attempts to subdue him.  It shows the officers struggling with

Plaintiff, attempting to hold him up against the wall and place him in the holding cell.

Finally, the extent of Plaintiff's injury, a non-displaced, fractured rib, does not in itself

indicate that the force exerted in taking control of him was unreasonable.  Once it is

perceived necessary to subdue an intoxicated arrestee, police officers cannot be expected

to proceed delicately.  Again, the video clearly shows that none of the force exerted

amounted to gratuitous violence.  In the context of these facts, the officers' forceful efforts

to subdue Plaintiff and place him in a holding cell were reasonable under the Fourth

Amendment standard.

Plaintiff also fails to establish unreasonableness on the part of Defendants regarding

his claim that he was denied medical treatment.  Although he had fractured his rib and

claims that he requested medical treatment from the officers throughout the night, he

indicated the next morning upon release that he did not require immediate medical

treatment.  Because Plaintiff has proffered no evidence which would allow a reasonable

juror to conclude that any of the officers' actions were unreasonable, Defendants are

entitled to summary judgment on Plaintiff's constitutional claims.

C. <u>Qualified Immunity</u>

Even if Plaintiff alleges facts which, if true, might allow a jury to find a violation of his constitutional rights, government officials performing discretionary functions are entitled to qualified immunity.  <u>Rich v. City of Mayfield Heights</u>, 955 F2d 1092, 1094 (6th Cir. 1992). "The entitlement is an immunity from suit rather than a mere defense to liability . . . ." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  Qualified immunity is purely a question of law for the court, and should be resolved as early in the case as possible.  <u>Poe v. Haydon</u>, 853 F.2d 418, 424 (6th Cir. 1988).  However, where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.  <u>Sova v. Mount Pleasant</u>, 142 F.3d 898, 903 (6th Cir. 1998).

The Sixth Circuit has set forth a three-part test for evaluating claims of qualified immunity:

> First, we determine whether a constitutional violation has occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

<u>Williams v. Mehra</u>, 186 F.3d 685, 691 (6th Cir. 1999).  Under this standard, the Defendant officers are entitled to qualified immunity if they can show that a reasonable officer would have believed that his actions were lawful in light of the clearly established law and the information they possessed at the time, as supported by the evidence.  See <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987).  Qualified immunity protects "all but the plainly

11

incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Here, virtually all of the police conduct complained of is captured on the videotape of the incident. Of course, it was clearly established law that police action in the course of an arrest or investigatory stop is evaluated under a Fourth Amendment reasonableness standard. Graham, 490 U.S. at 394. However, the evidence demonstrates that no constitutional violation occurred. Even if it were determined that the officers did use excessive force in violation of Plaintiff's constitutional rights, a reasonable officer in the situation would have believed such actions to be lawful and reasonable in light of the clearly established constitutional standard. Defendants are therefore entitled to the defense of qualified immunity and, as a result, summary judgment in their favor.

D. State Claims

    1. Gross Negligence

Under section 691.1407 of the Michigan Compiled Laws, an employee of a governmental agency has immunity for tort liability for injuries caused while in the course of employment. Pursuant to section 691.1407(2), however, such an employee is liable for his "gross negligence that is the proximate cause of the injury or damage." "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a).

Here, it appears quite possible that Defendants' actions were a proximate cause of Plaintiff's injury. However, there is no genuine issue of material fact as to whether a reasonable officer in Defendants' situation would have exerted force upon Plaintiff. The

conduct of the officers was reasonable in light of the fact that Plaintiff was disruptive and refused to comply with the officers' requests.  Further, Plaintiff has offered no evidence to support a finding that the officers' conduct was "reckless" or that the officers demonstrated a "substantial lack of concern" for whether Plaintiff was injured.  As such, the court will grant summary judgment to Defendants on Plaintiff's gross negligence claim against the individual officers.

### 2. Assault and Battery

Section 691.1407(3) of the Michigan Compiled Laws provides that governmental immunity "shall not be construed as altering the law of intentional torts."  Moreover, "an individual employee's intentional torts are not shielded by the Michigan governmental immunity statute."   Sudul v. City of Hamtramck, 221 Mich. App. 455, 458 (1997). Nevertheless, the measure of necessary force in the context of a police action "is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary." Anderson v. Antal, 191 F.3d 451 (6th Cir. 1999).  Because no reasonable juror could conclude from the facts that the extent of force used by the officers in this case was unnecessary, Defendants are entitled to summary judgment on Plaintiff's assault and battery claim.

### 3. Intentional Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 577, 686 N.W.2d 273 (2004).  The conduct complained of must be "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. The evidence presented by Plaintiff does not rise to the level of extreme and outrageous conduct, and summary judgment for Defendants is therefore proper on this claim.

II. Liability of Municipal Defendants

A. Liability Based on Policy/Custom

The City of Taylor is only liable if Plaintiff's injuries were the result of an unconstitutional policy or custom of the City. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing Monell v. Dep't of Social Svcs., 436 U.S. 658 (1978)). As discussed above, the City's policy addressing the use of force provides that "officers shall use the minimum amount of force necessary to effect lawful arrests, overcome resistance and perform their other lawful duties based on the totality of the circumstances." Plaintiff has offered no factual evidence, nor any proffer of expected discoverable evidence, indicating that the City's actual practice deviates from this policy.

B. Gross Negligence With Respect to Training and Supervision of Police Officers

A municipality can be liable for failure to train or supervise only when that failure reflects a "deliberate" or "conscious" choice. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Commander Don Helvey of the Taylor Police has attested to the fact that the City of Taylor has video cameras which constantly monitor the actions of officers, cadets, and prisoners in the jail. (Helvey Aff. at ¶ 21.) He has also testified that a newly hired officer is required to attend an intense field training program and that the training of a police officer

continues throughout the officer's career.  (Helvey Aff. at ¶ 12.)  Since Plaintiff has failed

to present any evidence of the City's failure to train or supervise, or any deliberate

indifference to Plaintiff's rights, there is no basis for finding the City liable for gross

negligence.

<u>CONCLUSION</u>

For the reasons given above, the court hereby GRANTS Defendants' motion for

summary judgment as to all claims.

IT IS SO ORDERED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  August 14, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on August 14, 2006, by
electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk